**UNITED STATES DISTRICT COURT**
**DISTRICT COURT OF NEW JERSEY**

| | |
|---|---|
| JERRY GIBBS, ROBERT REGISTER, HAMIDAH WALDRON AND EDWARD ARNOLD, others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC.<br><br>Defendant. | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Jerry Gibbs, Robert Register, Hamidah Waldron and Edward Arnold, (“Plaintiffs”), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant BMW of North America, LLC. ("BMW"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

**PRELIMINARY STATEMENT**

1. Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Toyota’s breach of its duties and rules.

2. Plaintiff brings this action on behalf of himself, and all similarly situated persons who purchase automobiles manufactured by, or on behalf of BMW of North America, LLC that were subjected to the NHSTA Recall Notice 25-v-644 dated September 25, 2025, concerning a defect with the Engine's Electrical Starter.

3. This action is brought to remedy various violations of law in connection with BMW's manufacturing, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.

4. The Class Vehicles have malfunctions regarding their electrical starter. Plaintiffs allege that a defect exists causing an electrical overload to the starter that could lead to its overheating a pose a fire hazard.

5. In late September 2025, BMW recalled nearly 145,000 of the above referenced Class Vehicles ("Recall").

6. The allegations herein are based on personal knowledge as to Plaintiffs' own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

8. BMW sells vehicles internationally, throughout the United States and within this judicial district. This Court has personal jurisdiction over the Defendant because the Defendant is has a principal place of business in Westwood New Jersey according to the NHSTA Recall[1].

9. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. BMW sells and distributes their vehicles throughout the United States and within this District.

**PARTIES**

10. Robert Register is a citizen of Florida. Mr. Register purchased a BMW 840i from BMW of Wesley Chapel located in Wesley Chapel, Florida. The BMW's VIN is WBAGV2C07PCL14287. An internet search on NHSTA's website evidence that this vehicle is subject to Recall Notice 25-v-644. At the time of filing, no remedy is yet available.

11. Jerry Gibbs is a citizen of Buffington, South Carolina. Mr. Gibbs purchased a BMW 740Li from Hilton Head BMW located Buffington, SC. The BMW's VIN is WBA7T2C02NCK12995. An internet search on NHSTA's website evidence that this vehicle is subject to Recall Notice 25-v-644. At the time of filing, no remedy is yet available.

12. Hamidah Waldron is a citizen of Phoenix, Arizona. Mrs. Waldron purchased a BMW 740Li from Bell Road Mitsubishi located Phoenix, Az. The BMW's VIN is WBA7T2C00LCE27050. An internet search on NHSTA's website evidence that this vehicle is subject to Recall Notice 25-v-644. At the time of filing, no remedy is yet available.

13. Edward Arnold is a citizen of Fontana, California. Mr. Arnold purchased a BMW 740Li from Puente Hills Mitsubishi located in Industry, California. The BMW's VIN is

[1] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V644-8931.pdf

WBA7T2C05LGL17293. An internet search on NHSTA's website evidence that this vehicle is subject to Recall Notice 25-v-644. At the time of filing, no remedy is yet available.

14. BMW of North America LLC is a Delaware corporation. It is also registered to do business in the State of New Jersey with a registered office located in Woodcliff Lake, New Jersey. A further internet search provides a location of 200 BMW Drive, Woodcliff Lake, NJ 07677 within New Jersey. This address is listed on the "About Us" Section of the Defendant's website[2].

15. BMW designs, manufactures, markets, distributes, services, repairs, sells, and leases vehicles, including the Class Vehicles, nationwide. BMW is the warrantor and distributor of the Class Vehicles in the United States.

16. BMW through various entities, markets, distributes, warrants, and sells BMW automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States.

## **FACTUAL ALLEGATIONS**

### A. **Recall 25-v-644**

17. On September 25, 2025, the National Highway Traffic Safety Administration issued Recall 25-v-644 concerning the electrical starter in certain BMW vehicles[3].
18. The Recall Notice 25-v-644 advises that 6 BMW models were impacted with having a defective starter. The models in question were: 1) 2020-2020 BMW 340i; 2) 2020-2025 BMW 840i; 3) 2020-2023 BMW 740Li; 4) 2019-2020 BMW X7; 5) 2020 BMW X6; and 2019-2020 BMW X5[4].
19. In total, it is believed that approximately 145,000 various BMWs were subject to the Recall.

---

[2] https://www.bmwusa.com/contact-us.html
[3] https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V644-8931.pdf
[4] Id.

20. The Recall check of the NHSTA website advises a defective starter can lead to a potential "thermal event" or, in other words, could result in a fire.

21. At the time of filing there is no remedy available, though BMW reports a willingness to provide a free replacement when available[5].

22. More troubling, is this Recall Notice references a prior Recall effort concerning BMWs starter in NHSTA Recall 24-v-576.

**B. Recall 24-v-576**

23. Recall 24-v-576 was issued by the NHSTA on August 1, 2024, concerning a defect with the electrical starter in certain BMW models.

24. The number of impacted vehicles was approximately 105,588 automobiles distributed across 8 different BMW models including many that were referenced in the September 2025 Recall 25-v-644.

25. The proposed remedy was a software update.

**C. Remedy**

26. As of filing, there is no available remedy being offered by BMW though the NHTSA notice advises that the anticipated remedy will be a free repair. As discussed more fully below, such a remedy, assuming it becomes available is inadequate.

27. There are no assurances that this remedy will be effective. Indeed, there is a population of Class vehicles that will be experiencing its second electrical starter recall in two years evidencing that the first recall was not successful.

[55] https://www.nhtsa.gov/recalls?vymm=WBA7T2C05LGL17293

28. Plaintiffs and Class Members have been deprived of the benefit of the bargain for having purchased Class vehicles with a systemic defect with the electrical starter. They thought they were purchasing a safe and reliable car and, instead, have purchased a car that is both susceptible to having problems starting and exposing them to a potential fire hazard. Plaintiff and Class members would either have not bought the Class Vehicles or would certainly have paid less for them had they know there was a systemic defect with the electrical starter.

29. The remedy is also futile because it does not account for the diminished value of the Class vehicles. Class Members will experience a reduced value in either their resale or trade in values because they have a car with a known history of electrical starter defects.

30. Assuming that the Recall was effective and offered a true fix, Plaintiffs and Class members will still be burdened with the time an expense of having to return their car to the dealership for the repair. In the interim, they are now presented with the Hobbesian choice of wither not using their car or using it and running the risk of experiencing a thermal event and expose themselves to a fire hazard.

31. In summary, BMW's recall is wholly inadequate and does not address the underlying cause mandating the recall, nor will it restore the value of the Plaintiff's vehicle.

**APPLICABLE WARRANTIES**

32. BMW sold the Class Vehicles with written express warranties.

33. For the Class Vehicles, BMW offered a written express basic warranty covering the Class Vehicles.

34. BMW provides these warranties to buyers after the purchase of the Class Vehicles is completed; buyers have no pre-sale knowledge or ability to bargain as to the terms of the warranties.

**FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS**

35. Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at BMW responsible for making false and misleading statements regarding the Class Vehicles. BMW is in possession of all of this information. Plaintiff's claims arise out of Defendant's fraudulent omission/concealment of the Electrical Starter Defect, despite their representations about the quality, safety, and comfort of the Class Vehicles.

36. Plaintiff alleges that at all relevant times, including specifically at the time he and Class members purchased their Class Vehicle, Defendant knew, or was reckless in not knowing, of the Electrical Starter Defect; Defendant had a duty to disclose the Electrical Starter Defect based upon their exclusive knowledge; and Defendant never disclosed the Electrical Starter Defect to Plaintiff or the public at any time or place in any manner other than a halfhearted, inadequate recall.

37. Plaintiffs make the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendant:

a. **Who:** BMW actively concealed and omitted the Electrical Starter Defect from Plaintiffs and the Class members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals as Defendant is responsible for such decisions.

b. **What:** BMW knew, or were reckless or negligent in not knowing, that the Class Vehicles contain the Electrical Starter Defect, as alleged herein. Defendant concealed and

omitted the Electrical Starter Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

c. **When:** BMW always concealed and omitted material information regarding the Electrical Starter Defect while making representations about the safety and dependability of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Plaintiffs contend that BMW still has not disclosed the truth about the full scope of the Electrical Starter Defect in the Class Vehicles to anyone outside of their respective entities. Plaintiff alleges that BMW has never taken any action to inform consumers about the true nature of the systemic Electrical Starter Defect in Class Vehicles.

d. **Where:** BMW concealed and omitted material information regarding the true nature of the Electrical Starter Defect in every communication they had with Plaintiffs and Class members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Electrical Starter Defect in the Class Vehicles to anyone outside of their respective entities. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on BMW's websites. There are channels through which Defendants could have disclosed the Electrical Starter Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class members through means such as state vehicle registry lists.

e. **How:** BMW concealed and omitted the Electrical Starter Defect from Plaintiffs and Class members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. BMW actively concealed and omitted the truth about the

existence, scope, and nature of the Defect from Plaintiffs and Class members at all times, even though they knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and BMW promised in its marketing materials that Class Vehicles have qualities that they do not have.

f. **Why:** BMW actively concealed and omitted material information about the Electrical Starter Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class members to purchase Class Vehicles and made representations about the quality, safety, durability, and comfort of the Class Vehicles.

Had BMW disclosed the truth about the electrical starter, Plaintiffs and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class (Class Members) are defined as follows:

**All persons in the United States who purchased various BMW model referenced in Recall Notice 25-v-644 concerning a defect in the electrical starter. Those models are reportedly: 1) 2020-2020 BMW 340i; 2) 2020-2025 BMW 840i; 3) 2020-2023 BMW 740Li; 4) 2019-2020 BMW X7; 5) 2020 BMW X6; and 2019-2020 BMW X5[6].**

39. Plaintiffs qualify as a member of each of the proposed classes in the preceding paragraphs.

40. Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendants; (ii) a relative

[6] Id.

of an employee or independent contractor of Defendants; (iii) an employee of the Court where this action is pending.

41. The proposed class definitions may be amended or modified from time to time.

42. The members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of BMW or its affiliates and agents and from public records.

43. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44. The Proposed Classes are so numerous that the joinder of all members is impracticable.

45. This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

46. **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of BMW and obtainable by Plaintiffs only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

47. **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased a Class Vehicle that contained the same Braking System Defect found in all other Class Vehicles.

48. **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiffs are an adequate class representative because their interests do not conflict with the interests of the Class that he seeks to represent. Plaintiffs have retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and his counsel.

49. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual class members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

50. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a. Whether Class Vehicles contain the alleged Electrical Starter Defect;

b. Whether Electrical Starter Defect would be considered material by a reasonable consumer;

c. Whether the Electrical Starter Defect would constitute an unreasonable safety risk;

d. Whether Defendant had a duty to disclose the Electrical Starter Defect to Plaintiffs and other Class Members;

e. Whether BMW knew or reasonably should have known of the Electrical Starter Defect before it sold Class Vehicles to Plaintiffs and Class Members;

f. Whether the Electrical Starter Defect has diminished the value of the Class Vehicles;

g. Whether BMW should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the Electrical Starter Defect;

h. Whether BMW is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective braking system;

i. Whether BMW breached the implied warranty of merchantability pursuant to state law and/or the UCC;

j. Whether BMW breached its express warranties under state law and/or the UCC

k. Whether BMW is liable for fraudulent omission;

l. Whether BMW was unjustly enriched;

m. Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY

51. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

52. Plaintiffs bring this count on behalf of themselves and the Class.

53. BMW is a merchant with respect to the Class Vehicles.

54. In its written express warranties, BMW expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

55. BMW's express written warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased their Class Vehicles equipped with the defective electrical starter.

56. BMW breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.

57. Plaintiffs believe that BMW was provided notice of the Electrical Starter Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

58. Furthermore, the express written warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because BMW has failed to adequately provide the promised remedies within a reasonable time.

59. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies allowable by law.

60. Also, and as alleged in more detail herein, at the time that BMW warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and BMW improperly concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

61. As a direct and proximate result of BMW's breach of its express warranties Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

62. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

63. Plaintiffs bring this count on behalf of themselves and the Class.

64. N.J. Stat. § 12A:2-314. provides that, unless excluded or modified, an implied warranty of merchantability exists in a sales contract if the seller is a merchant with respect to goods of that kind. Furthermore, it requires that goods be fit for ordinary purposes and conforming to promises made on the container or label.

65. BMW is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

66. The Class Vehicles are "goods" under the relevant laws, and Defendants knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

67. BMW entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiffs and Class Members for personal use.

68. The implied warranty of merchantability included with the sale of each Class Vehicle means that BMW guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiffs, and the Class Members.

69. BMW breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendants did not indicate that the Class Vehicles would contain the Electrical Starter Defect. This defect can prevent the car from starting properly and can also lead to an electrical overload which could pose a fire safety risk.

70. Given that Plaintiffs and Class Members are unable to safely drive the Class Vehicles without this fire safety risk, the Class Vehicles are not fit for their particular purpose of legal and safe transportation and usage.

71. BMW was put on actual notice of its breach through their review of consumer complaints as well as BMW own recalls.

72. Had Plaintiffs, Class Members, and the consuming public known that the Class Vehicles would not be provided with properly functioning starter system they would not have purchased the Class Vehicles or would have paid less for them.

73. As a direct and proximate result of the foregoing, Plaintiffs and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

74. Plaintiffs suffered injury in that they purchased a Vehicle that is worthless. For all intents and purposes, Plaintiffs' vehicles are now an unsafe vehicle with a notoriously defective electrical starter system.

75. Plaintiffs also suffered economic loss in reference to the value of their vehicles. As a result of BMWs Recall, Plaintiffs' Vehicle's resale value is now diminished. When Plaintiffs intend to sell their Vehicles, the reputation of being a faulty vehicle will harm the resale value and place Plaintiffs in a much worse bargaining position compared to if BMW had properly manufactured, designed, produced, distributed, and advertised Class Vehicles with functioning electrical starters.

76. Plaintiffs have suffered damages in that Plaintiffs have been inconvenienced by BMW's Recall and accompanying required repairs. As discussed above, Plaintiffs will spend hours upon hours tending to BMW's recall. The Electrical Starter Defect prevented the Class Vehicles

from being roadworthy and reliable. But for this defect, Plaintiffs would not have had to spend hours upon hours of their life tending to this Recall.

**COUNT III**
**UNJUST ENRICHMENT**

77. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

78. Plaintiffs bring this count on behalf of themselves and the Class. This cause of action is plead in the alternative and in equity should the court deem there is no other remedy available for the plaintiff's and that the benefit conferred upon the defendant was unjust.

79. Plaintiffs, and the other members of the Class, conferred benefits on Defendant in the form of monies paid to purchase BMW's worthless Class Vehicles equipped with a faulty braking system.

80. BMW voluntarily accepted and retained this benefit. BMW had knowledge and appreciation of this benefit, which was conferred upon them by and at the expense of Plaintiffs and the Class Members.

81. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing properly function electric starters in the Class Vehicles, it would be unjust and inequitable for BMW to retain the benefit without paying the value thereof.

82. The circumstances, as described herein, are such that it would be inequitable for BMW to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the Class Members.

83. BMW manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe and operable, without failure of its braking system. Instead, BMW sold

Vehicles that had a defective starter system that could overload leading to overheating and a risk of fire.

84. Because BMW's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

**COUNT IV**
**VIOLATION OF THE NEW JERSEY PRODUCTS LIABILITY ACT**
**(NJ. Stat. 2A:58C-1 *et seq*)**

85. Plaintiffs incorporate all previous paragraphs and allegations referenced herein.

86. Plaintiffs bring this action on behalf of themselves and the class.

87. The electrical starter in the Class Vehicle suffers from a design defect. As reported in the NHSTA Recall, the electrical starters are capable of overloading which can overheat the starter a pose a fire safety risk.

88. Plaintiffs allege that this defect is manifest when they, and other Class members, are operating the Class Vehicles in an ordinary and intended manner.

89. For many Class Vehicles, this is not the first issue involving the electrical starter system as there was a 2024 recall also related to a starter overload that could lead to a thermal event which was not properly remedied as evidenced by the September 2025 Recall.

90. As the designer and manufacturer of the Class vehicles, BMW had a duty to warn Plaintiff and Class members about the electrical starter defect and the history of known electrical starter defect within the Class Vehicles and failed to do so.

91. As there is no evidence that this systemic defect is caused by the operators of the Class Vehicles, it is apparent that the defect was known, or should have been known, to BMW at the time the Class Vehicles were manufactured.

92. The Defect has proximately caused the Plaintiffs' injuries. This defect damages the physical integrity of the Class Vehicles and renders them as an unreliable means of transportation as Class Vehicles either may not start properly and/or pose a fire safety hazard stemming from the design of the electrical starter system.

**COUNT V**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(NJ. Stat. 56: 8-1 *et seq*)**

93. Plaintiffs incorporate all previous paragraphs and allegations referenced herein.

94. Plaintiffs bring this action on behalf of themselves and the class.

95. BMW is aware that it has an issue with its electrical starter system for many of its models. In 2024, under Recall 24-v-576, roughly 105,000 automobiles spanning eight different vehicle series were recalled due to a defect in the electrical starter which could have the starter overload, overheat and pose a fire safety risk. The remedy for that recall was a free software repair.

96. This did not fix the problem, and, in September 2025, BMW issued another recall under Recall Notice 25-v-644, also addressing a faulty electrical starter system whereby the starter can overload, overheat and pose a fire safety hazard. There are Class Vehicles subjected to both recalls.

97. BMW markets itself with providing safe and reliable transportation. This would be a misrepresentation as it pertains to the Class Vehicles as automobiles with defective starters are not a reliable means of transportation and any vehicle whose design exposes drivers to a fire safety hazard are not safe.

98. NHSTA's awareness of two electrical starter defects by BMW evidence that BMW knew or should have known of the defect with the electrical starter before selling them to consumers and yet still chose to do so.

99. Plaintiffs and Class Members are now burdened with a vehicle that has an established track record of having significant structural defects that impacts the resale and trade-in value of their vehicles. Simply put, their vehicles are worth less now due to the defect with all other conditions being equal. This economic damage is proximately caused by BMW's design of the starter, their knowledge of the defect, and their misrepresentations while selling the vehicles to consumers.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs, on behalf of themselves and members of the Class, requests that the Court enter judgment in their favor and against Defendants, awarding as follows:

A. Certifying the Class as proposed herein, designating Plaintiffs as Class representatives, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C. Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiffs and Class Members are entitled;

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G. Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all those similarly situated, hereby request a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: November 7, 2025.

Respectfully Submitted,

/s/ Philip J. Furia
**Furia Law LLC**
Philp J. Furia
880 Third Avenue
5th Floor
New York, NY 10022
T: (646)-830-1915
furiap@furiafirm.com
*Attorneys for Plaintiff and Putative Class*

-AND-

Paul J. Doolittle (*Pro Hac Vice forthcoming*)
**POULIN | WILLEY| ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

***Attorneys for the Plaintiff and Class***